May it please the court, my name is Carol Edward and it is my pleasure to be here today representing Dennis Devyatov and his wife Kirsten Wilson who are also present in court. This immigration case comes to the court after a motion to reopen was denied by the Board of Immigration Appeals. Initially this case started as an asylum case and it was appealed to the Board of Immigration Appeals and during the time that the Board of Immigration Appeals case was pending Mr. Devyatov married Kirsten Wilson. He was representing himself pro se at that time. He filed the I-130 petition and it was... Is there any issue with what the marriage is perfectly valid and legitimate in every respect? At this point I don't believe there's any question at all. The I-130 has been approved. It looks like that's the way I read the brief. Yes. Okay. I read them the same way so if it'll save you a little bit of time what I'd really like to do is ask Ms. Goad why we can't work something out here so that the government can stipulate to the reopening or... Go ahead Ms. Goad. You have the laboring aura on this one so Ms. Edwards we'll let you save your eight minutes for rebuttal unless there's something more you want to say to us. Don't snatch defeat from the jaws of victory. I'd like to be a little more specific with you than Judge Talman was. Can we hold a mandate until the BIA acts or are you going to go get a writ from the Supreme Court? Until the Board acts. Well there's nothing pending before the Board at this point. But we do have a problem here don't we? The DHS has spoken twice and it's spoken inconsistently hasn't it? No I don't think so. I mean I think when you start off looking at the case we have to look at the issue before the court and the issue before the court is whether the Board's denial of the motion to reopen at the time based upon... The actual prodigate for that is the marriage is not valid and DHS has since taken a second look at that and DHS has determined in a different proceeding that the marriage is valid. So we have the government speaking twice and speaking inconsistently. Now how are we going to harmonize those two factual findings? Well I think getting down to the crucial issue in this matter is that I think the reason that DHS, the enforcement side, declined to join in a motion to reopen is the fact that we do have this prior asylum proceeding which was based upon Mr. Debutov's alleged status as a homosexual. If we look at the materials he submitted before CIS, to demonstrate that the marriage... Right, but he's lost on the asylum claim. He lost, but DHS certainly can look to that and find no matter if the marriage is bona fide at this point, there's a reasonable inference to conclude that Mr. Debutov pursued a false asylum claim and that alone would be a discretionary reason not to join in a motion to reopen. But BIA didn't say that did they? No, because the visa petition was not granted at the time the Board adjudicated this motion to reopen. Mr. Debutov had his opportunity while before the visa petition was adjudicated to demonstrate that the marriage... Did DHS say that the asylum petition was not valid? No. The DHS in the opposition to the motion to reopen did indicate that Mr. Debutov... That it was a sham asylum proceeding? I can find it in the record if you'd like. Yeah, that would be helpful. ICE indicated that the respondent applied for political asylum based on his sexual orientation. The respondent claimed that he feared persecution in Russia because he was gay. At his asylum hearing on September 3, 2002, the respondent testified that he started becoming aware of his sexuality when he was 13 years old. He then came out of the closet in the fall of 2001. The respondent is now married to a woman. What we have is Mr. Debutov entering into his marriage while his appeal of the IJ's denial of his asylum claim based upon his alleged status as a homosexual took place. He filed a notice of appeal of the IJ's decision, I believe in October 2002. He married Ms. Wilson in June 2003. The Board denied in January 2004. Mr. Debutov never alerted the Board to the fact that he had married a female United States citizen. He could have at that time alerted the Board, withdrawn the asylum application based upon his alleged status as a homosexual, filed a motion to remand at that point for adjustment of status, but he didn't do so. He continued to wait until the Board denied his appeal of the IJ's denial of his asylum claim, and only then did he file a motion to reopen seeking adjustment of status based upon the marriage that was entered into while his appeal was pending. On that motion, the Board has taken no action. On that motion? The motion to reopen. There is no motion to reopen currently pending before the Board. He filed that motion to reopen, yes. You're saying there's no jurisdiction to even consider it. No, there is. That's the issue before the Court. The Board did deny that motion to reopen, finding that Mr. Debutov failed to demonstrate that the marriage was bona fide. If the Immigration Service decided to join the motion or sua sponte file, we would get ultimately an adjudication as to the legitimacy of the marriage and the qualification to remain in the country, right? Yes, Mr. Debutov could file a motion to reopen requesting that the Board reopen sua sponte. Aren't those worthwhile objectives of the Act? I do believe that, but I do believe that we should not reward individuals. Mr. Brown, uphold the mandate and give the Board an opportunity to take its leisure as it does many times. And so it's six months or 18 months or something else. Who's been injured? Well, I guess I'm a little confused about how that would actually happen. Would that be upon Mr. Debutov's filing? We would enter an order that the mandate shall not issue unless the Clerk of our Court receives a further order from the panel. The Court can certainly do that. I'd like to do that, but by the same token, apparently the Board doesn't want to say yes or no either. But there is nothing before the Board right now. Well, if we uphold the mandate, there'll be something that'll bother them maybe, right? The Court can certainly do that. You can't deport the alien. Well, Mr. Debutov also does have a stay of voluntary departure. Well, we have a stay of a departure order too. Yes, yes. We've entered an automatic stay, unopposed. Yes. So until the case is over, it's not over. That's true. That's true. I'm still confused. You represented to us that DHS had made a determination that the asylum petition was a sham, and you read us a paragraph. I didn't hear anything in there that suggested that the petition was a sham. I heard a chronology, and I understand. I think Mr. Debutov has probably made a mistake in not alerting the BIA to the change in his status in withdrawing the petition. I agree with that. But I'm still sort of puzzled that we have two agencies or two branches here of the executive that have each made contradictory findings, and that we haven't tried to harmonize those. On the one hand, his petition is no good, and the marriage is a sham, and we've got another agency saying the marriage is valid. And I'm puzzled as to what we do when two agencies come up with contradictory findings. Well, I think that one answer to that is that the approval of the visa petition alone, the determination by DHS that the marriage is bona fide, is not the end-all, be-all. Of course, we know that. And this court suggested in Aguiman that that was true. DHS's approval of the visa petition certainly is prima facie evidence that the marriage is bona fide. But the board can still look to that and just say, okay, DHS decided that the marriage was bona fide, that's primary evidence, but can still determine that more evidence is needed to itself determine that the marriage is bona fide. Why don't we do this, Ms. Goad? It seems to me that as the attorney for the United States, you have an obligation to help us do some justice here. And really what we're suggesting to you is under these circumstances, given the fact that we've got two different apparently irreconcilable findings, that you should agree to stipulate to reopen and let the BIA take a look at this and resolve it. And then we would have something to review. But to just leave poor Mr. Debutoff kind of in immigration limbo doesn't seem fair to us. So that's what I am strongly urging you to do, and I think my colleagues feel the same way, if I can presume to speak for them, as you can tell from our questioning. Yes, absolutely. I don't think I can provide an answer right now. I understand that. You need to go back and talk to your client and talk to OLA. Yes, I will certainly do that, and I will certainly indicate that. Do you want us to defer submission for several weeks? So you can do that? That would be wonderful. What do you need, a month? A month would be nice. Let's give you 30 days. Okay. So just so I understand, I will go back to my office and the client and ask them whether they want to stipulate to reopening. Yes. I take it the other side has no objection to delaying 30 days waiting for the government. Okay. Please convey to your client that this panel believes strongly that it should stipulate to reopen so that we can get this thing adjusted. And we're not judging the result at all. We just want fair play. I understand. All right. So for the record, this matter will vacate submission for 30 days, and then it will be incumbent upon the government or Ms. Edwards to notify us at the end of that period whether or not the government has agreed to stipulate to reopen. For the adjudication of the adjustment. For the adjudication of the adjustment. Okay. All right. Thank you very much. Thank you. The case will vacate submission for 30 days, and that takes care of
judges: Beezer,tallman, Bybee